# King v. Commonwealth.

March 7, 1941.

L. O. Siler for appellant.

W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

The appellant was separately tried and convicted of voluntary manslaughter and sentenced to two years imprisonment under an indictment charging him and his father with the murder of Mitchell Davis, and an instruction informing the jury that although they might find appellant not guilty under Instruction No. 1, relating to murder by shooting with a deadly weapon, or Instruction No. 2, relating to voluntary manslaughter committed in sudden heat and passion, or Instruction No. 5 which will be outlined later, they should nevertheless find him guilty of voluntary manslaughter if the jury believed that he "had unlawfully injured" Davis by shooting and wounding him, and thereafter, in conjunction with his father, had "unlawfully, wilfully but without malice" neglected to provide or refused to permit others to provide "medical attention and care" for Davis "when they knew, or as reasonable prudent men should have known" that Davis' condition "as a result of gunshot wounds, was reasonably calculated to and would produce death if not cared for in a reasonable time and prudent way and in such a manner as was usual and customary for such a wound as was inflicted, in the community"; and that as a result of such failure or neglect the death of Davis "was hastened or accelerated and that he died as a result thereof."

Instruction No. 5 which immediately preceded the instruction under which appellant was convicted was couched in similar language and likewise pre-supposed appellant's innocence of murder as defined in Instruction No. 1, and voluntary manslaughter as defined in Instruction No. 2. It informed the jury that if appellant had "unlawfully" wounded Davis, and, thereafter, appellant and his father had "wilfully and feloniously and

with their malice aforethought'' entered into a conspiracy to prevent Davis from receiving medical attention and to cause and hasten his death from his injury, ''or that they unlawfully, wilfully, feloniously, and with their malice aforethought neglected to care for him or provide medical attention,'' and that Davis' death ''was hastened or accelerated'' as a result of the conspiracy, or as a result of the ''wilful neglect or wilful failure to provide medical attention,'' they should find appellant guilty of murder and fix his punishment at death or confinement in the penitentiary for life.

As heretofore indicated, Instructions No. 1 and No. 2 defined ''murder'' and ''voluntary manslaughter'' as those offenses are customarily defined in criminal prosecutions. Instructions No. 2a and No. 3 related to the duty of the jury to find appellant guilty of the lesser of the two offenses, provided they believed him guilty but entertained a reasonable doubt as to which of the two offenses he had committed. Instruction No. 4 related to appellant's right to kill Davis in self-defense or the defense of his father.

The jury in its verdict explicitly stated that it found appellant guilty under Instruction No. 6, which, together with Instruction No. 5 were doubtless based upon a separate count of the indictment charging appellant and his father with conspiracy to murder Davis, accomplished by refusing to give or permit others to give him aid or medical attention after he had been wounded.

It is not necessary for us to pass upon the sufficiency of the indictment, since there was no evidence whatsoever to sustain the charge of conspiracy, and the instructions referred to were erroneous in any event.

. The testimony showed without contradiction that the appellant shot Davis in the left leg with a shotgun in the necessary defense of appellant's father. The shooting occurred about 6:30 o'clock A. M. in front of the house in which appellant and his father resided. They immediately carried Davis to the front porch where a pillow was placed under his head and attempts made to staunch the flow of blood. There was no doctor within a distance of four or five miles and the Kings possessed neither automobile nor telephone. However, they did notify Davis' relatives and several of his cousins appeared on the scene. They also sent for a consta-

ble and a man who had been trained in the rendering of first aid to persons injured. Some hours elapsed before the first-aid man and the constable arrived, and about 11:30 A. M. an automobile was procured and Davis carried to the home of a physician some four miles distant, at which place Davis died within a few minutes after his arrival. No physician testified, and no evidence whatsoever was introduced to show either that the Kings knew that the procurement of medical aid would have saved Davis' life, or that such was the fact. There was no evidence that the Kings refused to permit Davis' removal or that they had any desire to prevent him from receiving all possible aid. True, there is testimony that the father said "he did not aim to pay money for a doctor's bill" and that the law officer he had sent for could take Davis to the county jail "and let them treat him there." It is also true that there is some evidence which indicates that the services of a physician could have been procured more speedily, but the suspicions which might arise from this fact are insufficient to justify the charge that the appellant or his father refused to render assistance or procure medical aid, or to permit others to do so.

The foregoing brief recital of the events following the shooting but emphasizes our statement that the instructions were erroneous in any event. Since appellant had admitted shooting and fatally wounding Davis, but claimed that he had shot in defense of his father, it is obvious that the jury's verdict finding him guilty "under instruction six," was a finding that he was justified 'in shooting Davis, and hence, that the shooting was not unlawful. Thus it is apparent that appellant could not have been convicted properly under either Instruction No. 5 or No. 6, as each required a finding that appellant had unlawfully wounded Davis as a condition precedent to his guilt. They were, in fact, meaningless, since they required for their application by the jury a belief in the accused's complete innocence of murder or voluntary manslaughter, the only unlawful acts denounced by the preceding instructions, and, at the same time, required, as a condition precedent to conviction thereunder, a finding that the accused had "unlawfully" injured the victim by shooting and wounding him.

There was no claim that the shooting was not intentional, and hence, neither voluntary manslaughter resulting from gross negligence or wanton recklessness on

the part of the accused, or involuntary manslaughter resulting from ordinary negligence was involved. Embry v. Commonwealth, 236 Ky. 204, 32 S. W. (2d) 979. As before observed, there was no evidence that prompt or any type of medical or other attention would have prevented Davis' death, and even if there had been such evidence, appellant would have been guilty of murder or voluntary manslaughter if his shooting of Davis was unlawful. As said in the case of Tibbs v. Commonwealth, 138 Ky. 558, 128 S. W. 871, 874, 28 L. R. A., N. S., 665: "* * * every one is held to contemplate and to be responsible for the natural consequences of his own acts."

From which arises the principle that "If the wound was a dangerous wound—that is, calculated to endanger or destroy life—and death ensued therefrom, it is sufficient proof of murder or manslaughter, and that the person who inflicted it is responsible, though it may appear that the deceased might have recovered if he had taken proper care of himself, or submitted to a surgical operation, or that unskillful or improper treatment aggravated the wound and contributed to the death, or that death was immediately caused by a surgical operation rendered necessary by the condition of the wound." See also 26 American Jurisprudence, Sections 51, 52, pages 193-195.

It follows that if appellant shot Davis, not in the necessary, or to him apparently necessary, defense of himself or his father, he was guilty of either murder or voluntary manslaughter, since the shooting was intentional, and he should have been convicted under the first or second instruction, whether or not Davis would have recovered had he received proper and prompt aid and medical attention. In such a state of case, the alleged neglect of appellant to furnish aid or medical attention, or his refusal to permit others to do so, becomes wholly immaterial. But, since the shooting was justified, appellant could not have been guilty of voluntary or involuntary manslaughter unless he had committed some subsequent act which converted a non-fatal injury into a fatal one. If the injury was fatal, nothing which appellant might have done could have changed the result, or lessened or increased his responsibility. Therefore, from whatever standpoint they may be viewed, Instructions No. 5 and No. 6 were improper and prejudicial.

We do not hold that individuals who, pursuant to a conspiracy or otherwise, intentionally bring about the death of a person suffering from an otherwise non-fatal wound by preventing him from obtaining medical or other aid, or by refusing to render assistance, when the duty to render it exists, may not be convicted of murder whether the wound be lawfully or unlawfully inflicted. If the refusal to permit a wounded person to obtain aid or medical attention, or to render it where the duty to render it exists, is so grossly negligent or reckless as to manifest a wanton disregard for human life, rather than a specific intent to bring about the death of the specific individual, the offenders may be guilty of voluntary manslaughter. Involuntary manslaughter may be the offense if the acts or omissions hypothesized were the result of ordinary negligence. But where the wound is unlawfully and intentionally inflicted by the individual or individuals charged with refusing to render or permit aid or medical attention, and death results from the refusal or neglect, the crime committed is murder or manslaughter, and the refusal to render or permit aid or medical attention should not be made the basis for separate instructions. On the evidence presented, the Trial Court should have instructed the jury to find the appellant not guilty.

Judgment reversed for proceedings consistent with this opinion.